

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Fred V. Meridith
Criminal District Attorney
County of Kaufman
Kaufman, Texas

Dear Sir:

Opinion No. 0-6431
Re: Legality of certain coin
operated machines.

This will acknowledge receipt of your request for
an opinion from this department on the above captioned sub-
ject.

Your first question concerns the legality of a
marble board game where the successful player wins a free
musical selection from the juke-box which is attached to
the marble board. The legality of this type machine was
discussed in this department's Opinion No. 0-5068, copy of
which has been furnished you.

Your second question concerns those coin operated
machines that have no "pay off" but are operated for amuse-
ment only. This type of machine was discussed in our Opin-
ion No. 0-2032. In that opinion, we held that proof of the
machine's being used for gaming was essential to a success-
ful prosecution under our penal statutes. In view of the
many cases cited in your brief, we have reconsidered this
question. After reviewing the authorities, we are inclined
to approve the conclusions reached in that opinion. While
it is true that the courts have defined amusement to be a
thing of value, the fact that the player receives amusement
in return for the coin deposited does not, of itself, con-
stitute the machine a gaming device. There must be an ele-
ment of chance involved. We quote from an opinion of the
Court of Criminal Appeals (Broaddus v. State, 150 S.W. (2d)
247), whose construction of the criminal law is controlling
in this State, Judge Christian said:

"'The machine in question is one which al-
ways gives in exchange for a nickel a package of
mints, and, in addition to the mints, a number

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

of "slugs," in varying amounts from two to twenty, with which a game may be played, <u>there being an element of chance in the number of slugs obtained for a nickel</u>. Is the right to play a game obtained in the above manner "property" or a "thing of value" within the meaning of our statute prohibiting the setting up of gambling devices and gambling? We think it is. It is a matter of common knowledge that the maintenance of places, having no value in themselves, but which are used for amusement only, are among the most remunerative kinds of property, such as miniature golf courses and other like means of amusement, and any thing that contributes to the amusement of the public is a thing of value. * * * '" (Underscoring ours)

It would follow from this then that the right to play the machine is "property" or "a thing of value," therefore, one who deposits a coin and receives only one play gets value received in the form of amusement, in like manner, as one who pays a fee to play a game of miniature golf or other game of amusement. The same reasoning applies to the "Shoot the Jap" machine mentioned in your request, in the absence of proof that the player may obtain something of value in addition to the amusement in return for his coin or that the machine is being used for purposes of gaming no prosecution would lie under our statute.

In cases where the "pay off" device has been disconnected, the rule seems to be otherwise.

". . . By the easy method of removing the pin, the machine becomes a gambling device if it was not one before. Assuming that the machine is an innocent vender of merchandise, when the pin is in place, and is a gambling machine when it is removed, we are of the opinion that the trial court should not have issued the injunction. The ease with which the machine can be converted from one into the other, and the manifest difficulty against which law enforcement officers would have to contend in determining the method of operation at

any particular moment, made it the duty of the trial court to deny the injunction." Chambers v. Bachtel, (Civ. Ct. App., 5th Dist.) 55 Fed. (2d) 851, cited with approval by the Court of Criminal Appeals in Broaddus v. State, supra.

Your question regarding a slot machine operated on the premises of an incorporated country club was answered in our Opinion No. O-3184, copy of which has been furnished you.

You inquire as to the controlling principle in determining whether a complaint for exhibiting a gaming device should be filed under Article 619, Penal Code, or one for knowingly permitting a gaming device to remain in the possession of or on the premises of the operator for gaming purposes under Article 630, Penal Code. You will note that the statutes define different offenses:

"Art. 619. Keeping or exhibiting gaming table or bank, etc.

"If any person shall directly, or as agent or employe for another, or through any agent or agents, keep or exhibit for the purpose of gaming, any policy game, any gaming table, bank, wheel or device of any name or description whatever, or any table, bank, wheel or device for the purpose of gaming which has no name, or any slot machine, any pigeon hole table, any jenny-lind table, or table of any kind whatsoever, regardless of the name or whether named or not, he shall be confined in the penitentiary not less than two nor more than four years regardless of whether any of the above mentioned games, tables, banks, wheels, devices or slot machines are licensed by law or not. Any such bank, table, wheel, machine or device shall be considered as used for gaming, if money or anything of value is bet thereon."

"Art. 630. Permitting device on premises

"If any person shall knowingly permit any gaming paraphernalia, table, or device or equipment of a gaming house, of any character whatever

Honorable Fred V. Meridith, page 4

to remain in his possession or on premises under his control or of which he is owner and to be used for gaming purposes, he shall be imprisoned in jail not less than thirty days nor more than one year."

In determining under which statute to file the prosecution attorney should be guided by the facts in each case. As stated in 12 Tex. Jur., Section 6, page 211:

"Different Offenses in Same Transaction. -- A single transaction may constitute more than one offense. For example, the same act or transaction may constitute a violation of two or more provisions of the code, . . . .

"A person may be held to answer for any offense, great or small, which can be legally carved out of the transaction. The state has the right to elect which crime originating out of the transaction it will prosecute him for. The accused has no choice in the matter, and may not complain if the evidence shows him to be guilty of the offense charged, though it also shows him to be guilty of a higher or a lower one, or one of a different nature. The state can carve but once, however, and will not be permitted to split or divide up a single act or transaction into divers parts and punish each moiety."

Your question regarding the Terrell Aviation, Ltd., reads as follows:

"We have just outside the City limits of Terrell also, Terrell Aviation, Ltd., an airport and school of instruction for British Flight Training School No. 1, which is operated by a limited partnership of three private individuals. The land is owned by the County, leased to the partnership who in turn constructed a number of buildings for instruction, hangars, operations tower, link training, supply, etc., dormitories

Honorable Fred V. Meridith, page 5

for the British flight cadets there, etc. The Defense Plant Corporation has now purchased from the partnership the physical properties constructed on the field; the U. S. Army furnishes the airplanes, supply, medical detachment, fuel, etc., and a small contingent of army officers and men. Most of the mechanics and instructors on the field are members of the Enlisted Reserve, by requirement of the government. The field also employs a number of civilian employees, both male and female. The school now only trains British cadets, but it operates a canteen where all alike, cadets, army regulars and reserve, and civilian employees congregate for food and drink. They are operating a couple of marble games with the free game payoff. I have advised that this canteen which is operated by private resources is no different from any other place in the county and that the operation of the machines is illegal."

Under these facts, we do not believe that this British Flight Training School would be exempt from the provisions of our statutes with respect to the operation of gaming devices. It does not appear that exclusive jurisdiction over this land has been granted to the United States Government, nor does it appear that the "canteen" is a Post Exchange operated by the United States Army, subject to military jurisdiction. This type of training school is authorized by Sections 411 to 419, inclusive, of Title 22, U.S.C.A., and popularly known as the "Lease-Lend Act." See 40 Opinions U. S. Attorney General ___, (May 23, 1941).

Your final question reads as follows:

"Have you had occasion to have written on the so called 'cigarette machine,' which is operated like a slot machine, except for the fact that it is not coin-operated, but has instead a meter on the side which tabulates the number of plays made; the operator pays-off 'over the counter' with cigarettes when player is successful in lining up some brand of cigarettes on the three spinning

wheels, and the player pays off over the counter to operator according to the tabulation of the plays on the meter, at a penny a play. Such a machine is exempt from the provisions of Art. 7047a for taxation purposes, I take it. We have made a case on one of these machines and its exhibition, play and pay-off. Is there any reason or authority preventing a prosecution under Article 619 or 630, P.C. for such exhibition?"

We think our statutes (Articles 619, 620, 622 and 630, P.C.) are sufficiently broad to include this type of machine. We are inclined to agree with Judge Looney's dissent in the Hightower case, 156 S.W. (2d) 327, and hold that all machines of this general character are "unprofitable for any purpose other than for gambling," and are gambling devices per se and proof of their being used for gambling is not essential to a successful prosecution under our statutes; however, in view of the confusion, if not conflict, in the reported cases, the safer procedure would be to allege and prove that it had been used for gambling. That is, that it pays off over the counter.

In your excellent brief submitted with your request, you cite several instances of conflict among the cases and the writer has found still others; however, a more thorough search of the authorities brings us to the conclusion that the conflicts are more apparent than real.

Article 619 makes it a felony to exhibit for the purpose of gaming certain types of gaming paraphernalia and provides that such table, bank, wheel, machine or device shall be considered as used for gaming, if money or anything of value is bet thereon. Article 620 provides that Article 619 is intended to include all games which in common language are said to be played, dealt, kept or exhibited. Article 621 lists a number of specific games which are to be included in addition to the gaming paraphernalia enumerated in Article 619. Article 622 provides in part that it shall be sufficient to prove that any game therein mentioned was played, dealt or exhibited, without proving that money or other article of value was won or lost thereon.

An analysis of these statutes reveal that the Legislature intended to condemn any conceivable type of machine which was or could be used for gaming. Recognizing that some types of machines might have a useful purpose, the Legislature provided in Article 619, "any such table, bank, wheel, machine or device shall be considered as used for gaming, if money or anything of value is bet thereon." Realizing too that some machines or games could be used only for gaming, they provided in Article 622, that, "It shall be sufficient to prove that any game mentioned (in articles 619, 620 and 621) was played, dealt or exhibited without proving that money or other article of value was won or lost thereon." In other words, the games mentioned in the statutes were made gaming devices per se and no proof of their being used for gaming was necessary. This last provision has caused some confusion regarding when a game is condemnable without proof of its being used for gaming. We think the Legislature intended to condemn those devices or games traditionally used for gaming and which could be used for no other purpose, especially those games enumerated in Article 621, namely: Faro, monte, vingt et un, rough et noir, roulette, A.B.C., Chuck-aluck, Kino and Rondo. Article 619 is more general and condemns all tables, banks, wheels, machines or devices of any kind that may be used for gaming. Since the passage of this statute (1913) we have observed the invention of a multitude of coin operated machines and devices; some are used for no other purpose than for gaming, others may be used for gaming by a simple mechanical adjustment or by "betting on the side," and still others are innocent venders of merchandise or amusement. We therefore suggest that in a prosecution under Article 619 or 630 of the Penal Code for exhibiting or knowingly permitting a machine of this type to remain in the possession of or on the premises under the control of the defendant, that proof of its being used for gaming be offered.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By H. T. Bob Donahue
H. T. Bob Donahue
Assistant

HTBD:db

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN